FILED - GR
February 10, 2026 10:23 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ns   SCANNED BY: NS / 2/10/26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KARANPREET SINGH,

    Defendant.

_____/

1:26-cr-13

Hala Y. Jarbou
Chief U.S. District Judge

**FELONY INFORMATION**

The United States Attorney charges:

**(Conspiracy to Commit Wire Fraud)**

From a time unknown, but from at least March 2025, to in or about June 2025, in the Southern Division of the Western District of Michigan and elsewhere, the defendant,

**KARANPREET SINGH,**

knowingly conspired and agreed with persons known and unknown to commit the offense of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349.

**OBJECT, MEANS, AND METHODS**

1. The object of the conspiracy was for the members of the conspiracy, including the defendant, KARANPREET SINGH, to unlawfully enrich themselves by devising and executing a scheme to defraud individuals, many of whom were elderly, and to obtain their money under materially false and fraudulent pretenses, representations, and promises.

2. It was part of the conspiracy that co-conspirators, including the defendant, KARANPREET SINGH, would transmit and cause to be transmitted wire communications that traveled in interstate and foreign commerce, including cellular telephone calls, WhatsApp text communications, emails and other text messages, in furtherance of the scheme to defraud.

3. It was further part of the conspiracy that:

   a. Co-conspirators, in overseas locations and most often in India, contacted victims, many of whom were elderly, via the internet. The co-conspirators communicated to their victims a variety of false schemes designed to get them to part with their money. On some occasions, the co-conspirators told the victims that their FaceBook accounts or social security account numbers were compromised. On other occasions, the co-conspirators indicated that the victims' computer anti-virus software indicated that their funds were used in the purchase of child pornography. The co-conspirators used a variety of other fraudulent schemes that were communicated to the victims to make them believe that the security of their financial accounts was at risk and that they needed to cooperate with the co-conspirators to secure their funds for later return.

   b. After the initial contact was made with a victim, a member of the conspiracy informed the victim that they needed to make a call to a specified number or that they would transfer the victim to someone who could help them. At that point, other co-conspirators would misrepresent to the victim that they were an employee of the victim's financial institution or a federal agent who would help them.

   c. On some occasions, the co-conspirators sent identification badges or federal credentials to the victims purporting to show that they in fact were financial institution or federal agents whose job it was to assist the victims.

   d. Once the victim connected with the purported federal agent or financial institution representative, the co-conspirator directed the victim to begin liquidating financial accounts or assets and to convert the accounts into currency, Bitcoin or gold.

    Although the schemes varied, the co-conspirators posing as federal agents or financial institution representatives continued to make misrepresentations to the victims to continue to get them to part with their money, including that they discovered the victim's bank accounts were now compromised. The co-conspirators told the victims to avoid disclosing what was occurring to anyone else because others, including their financial institutions, might be in on the scheme.

  e. Once the victim converted his or her investments into currency, Bitcoin or gold, the co-conspirator directed the victim where to send the Bitcoin or to deliver the currency or gold to a courier that the co-conspirator would send to meet with the victim. The co-conspirators gave the victim a code word or serial number from a dollar bill and told the victim that the courier would convey a dollar bill with the same serial number or say the same code word when picking up the gold. This made the victim believe that the couriers were working with the representative of their financial institution or federal agent with whom the victim was communicating over the phone.

  f. Defendant, KARANPREET SINGH, regularly picked up gold and currency at the direction of other co-conspirators.

  g. Defendant, KARANPREET SINGH, transported the gold and currency to other co-conspirators so that it could be liquidated and shared with members of the conspiracy.

  4. On or about June 18, 2025, in furtherance of the conspiracy and in execution of the scheme to defraud, the defendant, KARANPREET SINGH, at the direction of a co-conspirator, traveled to Portage, Michigan, to the vicinity of the home of an elderly victim, M.L.A. Victim

M.L.A., on prior occasions, and at the direction of a co-conspirator using the alias name "Josh," liquidated some of her bank account balances, purchased Bitcoin and gold and delivered the Bitcoin and gold to various co-conspirators. On June 18, 2025, M.L.A., at the direction of a co-conspirator using the same alias "Josh," delivered gold in the amount of $90,625.00 to KARANPREET SINGH after he provided a code word that matched the code word that "Josh" gave to M.L.A.

**18 U.S.C. § 1349**
**18 U.S.C. § 1343**

## FORFEITURE ALLEGATION

The allegations contained in this Felony Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense in violation of 18 U.S.C. §§ 1343 and 1349 set forth in this Felony Information, the defendant,

**KARANPREET SINGH,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

1. MONEY JUDGMENT: A sum of money that represents the proceeds obtained, directly or indirectly, from the offense charged in the felony information.

2. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)
18 U.S.C. § 1343
18 U.S.C. § 1349

Date: February **10**, 2026

TIMOTHY VERHEY
United States Attorney

_____
RONALD M. STELLA
First Assistant United States Attorney